J-S48001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.A.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.E.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 950 EDA 2019 |

Appeal from the Decree February 25, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  51-FN-001868-2016,
CP-51-AP-0000623-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: K.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.E.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 951 EDA 2019 |

Appeal from the Order Entered February 25, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  51-FN-001868-2016,
CP-51-DP-0001880-2016

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 09, 2019**

---

[*] Retired Senior Judge assigned to the Superior Court.

M.M. ("Father") appeals the February 25, 2019 decree that involuntarily terminated his parental rights to his son, K.C. a/k/a K.A.M.C.,[1] born in April 2015.[2] We affirm.[3]

As recounted by Community Umbrella Agency (CUA) case manager, Faith-Joy Toe, when K.A.M.C. was approximately eight months old, he and Father resided with a family friend. Following Father's arrest for robbery and related offenses five months later, K.A.M.C. was placed in kinship foster care with that family, which is now a pre-adoptive resource. N.T., 2/25/19, at 11-12, 17, 30.

Father pled guilty to robbery with the threat of imminent serious injury, possession of instruments of crime, and conspiracy. During October 2016, the sentencing court imposed a term of four to ten years imprisonment. *Id*.

_____

[1] For clarity, we refer to the child in question as K.A.M.C. We note that the trial court docket in the termination matter reflects that on August 1, 2018, K.A.M.C.'s name was changed from K.C. to K.A.M.C.

[2] By separate decree entered the same date, the trial court confirmed consent and terminated the parental rights of K.A.M.C.'s mother, S.S.C. ("Mother"), who had previously signed documentation agreeing to voluntarily terminate her parental rights in July 2018. Mother has not filed an appeal and did not participate in the instant appeals.

[3] Father also appeals the February 25, 2019 juvenile court order changing K.A.M.C.'s permanent placement goal from reunification to adoption pursuant to the Juvenile Act, 42 Pa.C.S. § 6351. We consolidated the appeals *sua sponte*; however, Father subsequently waived any opposition to the goal change by failing to challenge it in his brief. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa.Super. 2017) (claim is waived where appellate brief fails to provide discussion with citation to relevant legal authority or fails to develop issue in meaningful fashion capable of review). Accordingly, we affirm that order summarily.

at 37; *see also* DHS Exhibit 1. He remains incarcerated at SCI Rockview, with an earliest possible release date in May 2020.

Meanwhile, on September 9, 2016, the Juvenile Court adjudicated K.A.M.C. dependent and granted legal custody to the Philadelphia Department of Health and Human Services. The court held periodic permanency review hearings on December 5, 2016, February 27, 2017, May 2, 2017, September 12, 2017, December 11, 2017, March 9, 2018, and June 1, 2018. Throughout these proceedings, the court maintained K.A.M.C.'s commitment and placement. Of import, on February 27, 2017, the trial court noted Father's incarceration and CUA's obligation of outreach to Father. Likewise, on May 2, 2017, December 11, 2017, and March 9, 2018, the court referenced Father's continuing incarceration and CUA's obligation regarding single case plan objectives and/or outreach to Father. Thereafter,

> [o]n June 1, 2018, a permanency review hearing was held for [K.A.M.C.]. Father participated in this hearing via telephone. The trial court determined that Father had been minimally compliant with the permanency plan. The trial court referred Father for parenting education, housing assistance, employment assistance, and anger management counseling. [K.A.M.C.]'s concurrent placement plan was identified as adoption and [K.A.M.C.]'s placement continued to be necessary and appropriate.

Trial Court Opinion, 6/7/19, at 3.

On August 10, 2018, DHS filed petitions to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and to change K.A.M.C.'s goal to adoption. The trial court held a

hearing on DHS's petitions on February 25, 2019.[4]  In support thereof, DHS presented the testimony of Faith-Joy Toe, CUA case manager.  Father, who was represented by counsel, testified via teleconference from SCI Rockview.  Notably, K.A.M.C. was represented by legal counsel and a guardian *ad litem* during this proceeding.[5]

By decree and order entered February 25, 2019, the trial court involuntarily terminated the parental rights of Father to K.A.M.C. pursuant to 23 Pa.C.S. § 2511(a) (2), (8), and (b).  On March 25, 2019, Father, through appointed counsel, filed timely notices of appeal, as well as concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which were consolidated *sua sponte* by this Court on April 25, 2019.

Father raises the following issues for our review:

---

[4] Several continuances were granted before the hearing was able to proceed on February 25, 2019, in part, to enable Father to participate.  **See** Continuance Orders, 1/22/19, 12/11/18, 11/19/18, 9/28/18.

[5] Child was represented by Daniel Kurland, Esquire, as legal counsel and Patricia Cochrane, Esquire, standing in for Carla Beggin, Esquire, as guardian *ad litem*.  Both argued in favor of termination of Father's parental rights. N.T., 2/25/19, at 58.  Further, Attorney Kurland indicated that, due to K.A.C.M.'s age, he was unable to discern K.A.M.C.'s preference, stating, "And all that's left at this point is [K.A.M.C.], who is three years old.  [He is] not able to vocalize [his] wishes and desire." **Id.** at 8.  **See In re T.S.**, 192 A.3d 1080, 1089-90, 1092-93 (Pa. 2018) (finding the preferred outcome of a child who is too young or non-communicative unascertainable in holding a child's statutory right to counsel not waivable and reaffirming the ability of an attorney-guardian *ad litem* ("GAL") to serve a dual role and represent a child's non-conflicting best interests and legal interests).

1. Whether the trial court erred by terminating the parental rights of [F]ather pursuant to 23 [Pa.C.S. §] 2511(a)(2) without clear and convincing evidence of [F]ather's present incapacity to perform parental duties.

2. Whether the trial court erred by terminating the parental rights of [F]ather pursuant to 23 [Pa.C.S. §] 2511(a)(8) without clear and convincing evidence that the conditions that led to placement of the children continue to exist when [F]ather presented evidence of compliance with the goals and objectives of his family service plan.

3. Whether the trial court erred by terminating the parental rights of [F]ather pursuant to 23 [Pa.C.S. §] 2511(b) without clear and convincing evidence that there is no parental bond between [F]ather and children and that termination would serve the best interest of the children.

Father's brief at 7 (superfluous issues omitted[6] and paragraphs renumbered for ease of disposition).

In matters involving involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S*.*P*., 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id*. The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id*. at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning

_____

[6] While Father also presented issues concerning the application of § 2511(a)(1) and (5), respectively, we omitted those claims because the trial court did not terminate Father's parental right pursuant to either subsection.

- 5 -

multiple hearings. *See In re R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). As we have explained, "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). Thus, "if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under [§] 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear

conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting ***Matter of Adoption of Charles E.D.M., II***, 708 A.2d 88, 91 (Pa. 1998)).

In the case *sub judice*, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (8), and (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Instantly, the certified record supports the court's decision to terminate Father's parental rights pursuant to § 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
>> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection

> (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), and (b).

First, we address whether the trial court abused its discretion by terminating Father's parental rights pursuant to § 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M*.*E*.*P*., 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). We observe that, "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C*.*D*.*R*., 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)). Indeed, "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A*.*L*.*D*., *supra* at 340 (internal quotation marks and citations omitted).

- 8 -

In *In re Adoption of S*.*P*., 47 A.3d 817 (Pa. 2012), our Supreme Court definitively held

> that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). *See e.g*. *Adoption of J.J*., 515 A.2d [883, 891 (Pa. 1986)] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re*] *E.A*.*P*., 944 A.2d [79, 85 (Pa.Super. 2008)] (holding termination under § 2511(a)(2) was supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

*In re Adoption of S*.*P*., *supra* at 830 (footnote omitted).

Father argues that he remedied the issues that led to the placement of K.A.M.C. and that he achieved the present capacity to parent and care for K.A.M.C. despite his incarceration. He contends, "There are no grounds to terminate [F]ather's parental rights under [§] 2511(a)(2) because there is no clear and convincing evidence of present incapacity and all conditions that contributed to the placement of the child have been remedied." Father's brief at 12. We disagree.

A review of the certified record supports the trial court's finding by clear and convincing evidence that grounds exist to terminate Father's parental rights pursuant to under § 2511(a)(2). Significantly, the record reveals that Father has been incarcerated since May 2016 and has not had physical contact

with his son for nearly three years. N.T., 2/25/19, at 27, 42. While Father initially spoke with then then-two-year-old K.A.M.C. on the telephone, Ms. Toe recounted that all father-son communication ceased during the summer of 2017, approximately one year before DHS filed the petition to terminate parental rights. *Id*. at 17-18, 23-24, 29. Likewise, despite Father's testimony to the contrary, she indicated that Father has not sent gifts. *Id*. at 17. Further, Ms. Toe reported that Father only has contacted CUA on three occasions, although he did inquire as to K.A.M.C.'s welfare in those communications. *Id*. at 24-25.

Moreover, since Father was serving a four-to-ten year sentence with a minimum release date in May 2020, he could not be safely reunified with K.A.M.C. in the immediate future. *Id*. at 27, 37. Critically, Ms. Toe testified that Father's efforts to rectify the causes of placement do not satisfy K.A.M.C.'s needs. *Id*. at 25. While Father was moderately compliant with the goals outlined in his SCP, *i.e.*, he participated in available prison programs, and completed a Pathway to Success class and Victim Awareness education, Ms. Toe indicated that those accomplishments, "don't align with his single case plan goal as far as parenting or -- or any kind of mental health that may have been -- or anything like that[.]" *Id*. at 15.

Moreover, it is unclear when, if ever, Father will be in a position to care for K.A.M.C. The prospect of uncertainty is simply unacceptable for K.A.M.C., who was nearly four years old as of the date of the hearing and resided in kinship care for all but the first year of his life. As this Court has stated, "[A]

child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S*., 901 A.2d 502, 513 (Pa.Super. 2006). As the certified record substantiates the trial court's conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused K.A.M.C. to be without essential parental control or subsistence necessary for his physical and mental well-being, we will not disturb it. *See In re Adoption of M*.*E*.*P*., *supra* at 1272; *In re Adoption of S*.*P*., *supra* at 830 (noting approval of termination under § 2511(a)(2) where repeated incarcerations and failure to be present for child caused child to be without essential care and subsistence for most of child's life).

We next address the trial court's needs-and-welfare analysis pursuant to § 2511(b). The following principles inform our review:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M*., 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M*., [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M*., 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

- 11 -

*In re T.S.M.*, *supra* at 267.  As it relates to the present case, "where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists.  The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case."  *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

Father argues that he has a "strong emotional bond" with K.A.C.M., as he served as K.A.C.M.'s caregiver during his formative years.  Father's brief at 14.  He further asserts that DHS and CUA, through their lack of reasonable efforts, have hampered his ability to strengthen this relationship.  *Id*.  Father concludes,

> There are no legal grounds to terminate [F]ather's parental rights under [§] 2511 (b) because there was no clear and convincing evidence offered at trial to establish that termination would serve the best interest of [K.A.M.C.].  Father has established that a strong emotional bond exists between him and his child. Termination of [F]ather's parental rights would not best serve the developmental, physical and emotional needs of [K.A.M.C.]. Father's ability to deepen and strengthen the bond between him and his child was severely compromised by the actions of the Department of Human Services and their agents.

*Id*.

In finding that K.A.C.M.'s emotional needs and welfare favor termination pursuant to § 2511(b), the trial court reasoned as follows:

> Father has not seen [K.A.M.C.] since his arrest [and subsequent incarceration] on May 29, 2016.  . . .  Since Father has been incarcerated [for three years], he has not provided gifts to [K.A.M.C.], although Father claimed that he was sending gifts. [K.A.M.C.] used to participate in phone calls with Father, but those communications were discontinued during the summer of 2017. Throughout the life of the case, Father has reached out to the CUA

- 12 -

case manager on only three occasions. . . . [K.A.M.C.] has been in [kinship] care since May 2016, after Father was incarcerated. [The kinship] home is a pre-adoptive placement. [The pre-adoptive parents] are [K.A.M.C.]'s essential caregivers. [K.A.M.C.] resides in the home with three [other children], with whom he has a strong bond. [K.A.M.C.] is also strongly bonded with [the pre-adoptive parents, who] are the only parents [K.A.M.C.] knows. If [K.A.M.C.] was removed from [the kinship] home, the result would be devastating. [K.A.M.C.] would not suffer any harm if Father's parental rights were terminated and it is in [K.A.M.C.]'s best interest to be freed for adoption. [K.A.M.C.] does not know Father. [K.A.M.C.] is safe in [the pre-adoptive] home with his needs being met. . . . The record establishes by clear and convincing evidence that termination would not sever an existing and beneficial relationship with Father. The DHS witness was credible. The trial court's termination of Father's parental rights to [K.A.M.C.] under 23 [Pa.C.S. § 2511](b) was proper and there was no error of law or an abuse of discretion.

Trial Court Opinion, 6/7/19, at 9-10 (citations to record omitted).

Upon review, we discern no abuse of discretion. Notwithstanding Father's protestations to the contrary, the certified record belies the existence any meaningful bond between father and son and supports the trial court's finding that K.A.M.C.'s developmental, physical and emotional needs and welfare favor termination of Father's parental rights pursuant to § 2511(b). *See T.S.M.*, *supra* at 267.

As of the date of the evidentiary hearing, Father had not had physical contact with K.A.M.C. in approximately three years and **no** contact with him in almost one and one-half years. N.T., 2/25/19, at 17-18, 23-24, 27, 29. Ms. Toe, characterized the nonexistent father-son relationship as follows: "I believe [K.A.M.C.] does not know his father. He's not even aware of his father." *Id*. at 28.

In contrast to the evanescent connection to Father, K.A.M.C. is thriving in the pre-adoptive kinship home, where his needs are being satisfied. *Id*. at 17, 28. As observed by Ms. Toe, K.A.M.C. has a "natural bond" with his kinship parents and views them as "essential caregivers." *Id*. at 26. She explained, "They're the only parents he knows. He knows no one else." *Id*. at 27. K.A.M.C. additionally is "very bonded" to his three siblings in the home. *Id*. As such, Ms. Toe opined that it would be harmful to K.A.M.C. if he were removed from his resource home, stating, "It's like removing a three-year-old that already -- that knows their mom and dad and placing him in somewhere. It would be very devastating." *Id*. She further expressed that K.A.M.C. would not suffer any harm if Father's parental rights were terminated and that it would be in K.A.M.C.'s best interests to be available for adoption. *Id*. at 27-28.

While Father may profess to love K.A.M.C., a parent's feelings of love and affection for a child will not preclude termination of parental rights. *In re Z.P*., 994 A.2d 1108, 1121 (Pa.Super. 2010). At the time of the hearing, K.A.M.C. had been in placement for approximately two and half years, a majority of his young life, and he is entitled to permanency and stability. As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id*. at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or

her potential in a permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted).

To the extent that Father's argument may be read to include an assertion of a lack of reasonable efforts on the part of the agency, this argument is without merit. When reviewing a termination decree on appeal, we do not consider whether the agency made reasonable efforts. Our Supreme Court has rejected the argument that the provision of reasonable efforts by the county children's services agency is a factor in termination of the parental rights of a parent to a child. ***See In the Interest of: D.C.D.***, 105 A.3d 662, 673-74, 676 (Pa. 2014) (rejecting suggestion that agency must provide reasonable efforts to enable parent to reunify with child prior to terminating parental rights).

For all of the foregoing reasons, we find that the trial court did not abuse its discretion in terminating Father's parental rights under 23 Pa.C.S. § 2511(a)(2) and (b).

Decree and order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/9/19

- 15 -